UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**UNITED STATES OF AMERICA**           **CASE NO.  3:20-CR-00213-01**

**VERSUS**                              **JUDGE DOUGHTY**

**JOHN EDWARD MCINTYRE (01)**           **MAG. JUDGE KAREN L. HAYES**

## REPORT AND RECOMMENDATION

Defendant, John Edward McIntyre, is charged in a three-count indictment with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii), possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924 (c)(1), and felon in possession of a firearm, in violation of 18 U.S.C. § 922 (g)(1). On November 20, 2020, Defendant filed a motion to suppress evidence seized during a traffic stop. [doc. # 20]. The motion is opposed. [doc. # 22]. For the following reasons, it is recommended that the motion be DENIED.

## Background

On January 12, 2020, Deputies Adam Arrant ("Arrant") and Tyler Dooley ("Dooley") initiated a traffic stop of Defendant John McIntyre ("McIntyre"). [doc. #22, pp. 1-2]. Arrant and Dooley had been driving on unrelated business when they observed a white Tahoe cross the centerline on Drago Street in West Monroe and then change lanes at an intersection without signaling. [doc. # 22, p. 2]. The deputies then performed a traffic stop on the white Tahoe for violating Louisiana Revised Statute 32:79 - Driving on a Roadway Laned for Traffic. [doc. # 22, p. 2].

When Dooley and Arrant approached the driver's and passenger's windows, respectively, they observed that McIntyre, the driver, was the only person in the Tahoe. [doc. # 22, p. 2]. Dooley informed him of the reason for the traffic stop, and McIntyre explained that he had been eating cereal while driving, which made him unable to stay in his lane. [doc. # 22, p. 2]. According to Dooley, McIntyre seemed nervous during the encounter, and McIntyre's hand was shaking as he handed Dooley the vehicle paperwork. [doc. # 22, p. 2]. Further, Dooley noticed black digital scales in the cupholder, which both deputies know are commonly used in drug distribution, and Arrant recognized McIntyre from previous cases in the area as a known methamphetamine dealer. [doc. # 22, p. 2]. Arrant knew that the Metro Narcotics Unit had an active investigation into McIntyre for dealing methamphetamine. [doc. # 22, p. 3].

Arrant asked McIntyre for consent to search the Tahoe, which McIntyre denied. [doc. # 22, p. 3]. The deputies then called for a K-9 unit to come to the scene; meanwhile Arrant checked to see if the defendant had outstanding warrants against him, as well as contacting the Metro Narcotics Unit to see if they possessed warrants signed by the judge but not entered into the system yet. [doc. # 22, p. 3]. Shortly thereafter (within five minutes), the K-9 unit arrived and performed a free air sniff of the Tahoe, alerting the deputies to the odor of illegal controlled substances in the Tahoe. [doc. # 22, p. 3]. First, the dog alerted on the front passenger side of the vehicle, where the door was closed; then, the K-9 unit walked around the rear of the vehicle to the open driver's side door, where the dog entered the car and alerted once more to the presence of controlled substances. [January 11, 2021 Evidentiary Hearing, testimony of Officer Martin].

At this point, deputies had not issued traffic citations or completed their records check of McIntyre, and based on the K-9 alert, they searched the Tahoe. [doc. # 22, p. 3]. In the vehicle, the deputies found digital scales and a backpack. [doc. # 22, p. 3]. Inside the backpack, they

2

located a black magnetic box containing approximately 120 grams of methamphetamine, 13 suspected Clonazepam pills, 14 bags containing approximately 1400 Xanax pills, marijuana, other prescription drugs, two Christmas cards, a Sig Sauer 9mm semi-automatic handgun, and $2,185.00 in U.S. Currency. [doc. # 22, p. 3]. The stop lasted approximately four to six minutes in total.

On September 23, 2020, a federal grand jury indicted Defendant on one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and one count of felon in possession of a firearm in violation of 18 U.S. C. § 922(g)(1). [doc. # 1].

On November 20, 2020, Defendant filed a motion to suppress evidence seized on the grounds that (1) Defendant committed no traffic violation to justify the initial stop and (2) the detention of Defendant while the deputies waited for the K-9 unit was unreasonable. [doc. # 20]. On December 11, 2020, the Government filed its response, claiming (1) the deputies had reasonable suspicion to perform the traffic stop due to Defendant's crossing the center line and failing to signal when changing lanes; (2) that the deputies did not extend the detention of Defendant to wait for the K-9 unit, but even if they had such an extension was supported by reasonable suspicion and thus not a violation of the Fourth Amendment and (3) the K-9's alert on the vehicle provided probable cause to search the vehicle. [doc. # 22].

An evidentiary hearing was conducted on January 11, 2021. [doc. # 25]. Defendant made an oral motion for discovery to produce the supplemental K-9 report written by Officer Martin, the K-9 handler. [doc. # 24]. The Court granted the motion, ordering production of the supplemental K-9 report. [doc. #s 25]. According to both counsel, the supplemental K-9 report

3

was produced, and matched Officer Martin's testimony; therefore, there is no need for additional testimony. Accordingly, the motion is ripe.

## **Law and Analysis**

**1. The Traffic Stop was Reasonable**

When an officer has probable cause to believe an individual has violated the traffic code, the stop is rendered reasonable under the Fourth Amendment. *United States v. Valenzuela-Gomez*, 816 Fed. App'x 914, 917 (5th Cir. 2020); *Whren v. United States,* 517 U.S. 806 (1996). The actual motivation for the stop does not affect the reasonableness of the stop. A traffic stop constitutes a seizure under the Fourth Amendment, and a court determines the reasonableness of a traffic stop by examining "whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

Under the first prong, a traffic stop is justified at its inception when an officer has a reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.* Reasonable suspicion exists when officer has "a particularized and objective basis for suspecting legal wrongdoing" based on the totality of the circumstances. *Id.* (internal quotations omitted). An officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* Although "reasonable suspicion need not rise to the level of probable cause," a "mere hunch will not suffice." *Id.*

Further, "the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810

(1996). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (citations omitted). An officer has probable cause to conduct a traffic stop when he personally observes the defendant commit a traffic violation. *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014).

Here, the officers' testimony establishes that they personally observed Defendant's vehicle cross the center line and depart from its lane without signaling, which is a violation of Louisiana traffic law. Under Fifth Circuit precedent, this observation gave the officers probable cause to conduct a traffic stop. Defendant presented no evidence at the evidentiary hearing to refute the basis for the stop. Thus, the initial stop was justified because the officers personally observed Defendant commit a traffic violation.

2. **The Time of Detention was Reasonable**

Under the second prong of *Terry*, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)." During a traffic stop, a police officer may examine a driver's license and vehicle registration, run a computer check on the driver and the vehicle, and question the driver about a wide range of matters, including those unrelated to the purpose of a routine traffic stop." *Zavala*, 541 F.3d at 576. "All these inquiries are within the scope of investigation attendant to the traffic stop." *Brigham*, 382 F.3d at 508.

However, "[a]n officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable

5

suspicion of additional criminal activity in the meantime." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010) "Once a computer check is completed and the officer either issues a citation or determines that no citation should be issued, the detention should end and the driver should be free to leave." *United States v. Santiago*, 310 F.3d 336, 341–42 (5th Cir. 2002). "In order to continue a detention after such a point, the officer must have a reasonable suspicion supported by articulable facts that a crime has been or is being committed." *Id.* at 342. *See also Rodriguez v. United States*, 575 U.S. 348, 353-54 (2015) (absent reasonable suspicion, police may not extend a completed traffic stop in order to obtain a drug-sniffing dog).

Here, upon approaching the vehicle, Officer Dooley noticed black digital scales in the cupholder of Defendant's vehicle and knew that scales are often used in drug distribution and dealing. Further, Officer Dooley observed Defendant's nervous demeanor and shaking hand when he asked for his vehicle paperwork. Officer Arrant recognized Defendant from previous drug-related investigations in the area and knew that Defendant had a drug-trafficking history. Although a K-9 unit was called to the scene, the officers did not extend the traffic stop unreasonably by doing so because they were still checking for warrants when the K-9 unit arrived on scene. However, even if the record and warrant check had been completed prior to the arrival of the K-9 unit, the officers still had reasonable suspicion to extend the stop because the observation of digital scales combined with Defendant's nervous demeanor and known history of drug trafficking provided reasonable suspicion that illegal activity was taking place. The stop took a total of four to six minutes: clearly a reasonable time.

   3. **The Vehicle Search was Supported by Probable Cause**

Finally, the first alert of the K-9 unit did not constitute a search and provided reasonable suspicion for the officers to search Defendant's vehicle. Generally, "an alert by a drug-detecting dog provides probable cause to search a vehicle." *United States v. Rodriguez*, 702 F.3d 206, 210 (5th Cir. 2012). Here, the K-9 unit first alerted on the closed front passenger side door of the vehicle, giving the officers reasonable suspicion to search the vehicle. Regardless of whether the dog's jumping in the driver's side door of the vehicle constituted a search, she had already alerted on the other side of the car where the door was closed, so there was probable cause for the search. Thus, the officers' stop of Defendant was reasonable in scope and based on reasonable suspicion, and their search of the vehicle was supported by probable cause. Accordingly, the motion to suppress evidence of the search must be denied.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's motion to suppress [doc. # 20] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error, from**

**attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, at Monroe, Louisiana, this 20th day of January 2021.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE